# 14-1960-cv

## United States Court of Appeals
### for the
## Second Circuit

———◆❙◆———

JEFFERY SIEGEL, RICHARD SIEGEL,

*Plaintiffs-Appellants,*

– v. –

ANNETTE APERGIS, UNITED STATES OF AMERICA, FLORENCE CORP., d/b/a
FLORENCE BUILDING MATERIALS, DLJ MORTGAGE CAPITAL, INC., SAMUEL
FELDMAN LUMBER CO., d/b/a FELDMAN LUMBER, INTERAMERICAN
MORTGAGE CORP., COASTAL CAPITAL CORP., JUNE SIEGEL, individually and
as Representative of the Estate of SEYMOUR SIEGEL,

*Defendants-Appellees,*

– and –

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for WASHINGTON MUTUAL BANK

*Defendant*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## DLJ MORTGAGE CAPITAL, INC.

HAHN & HESSEN LLP
*Attorneys for Defendant-Appellant
  DLJ Mortgage Capital, Inc.,*
488 Madison Avenue
New York, New York 10022
(212) 478-7200

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned counsel for Plaintiff-Appellee DLJ Mortgage Capital, Inc. ("DLJ") (a private non-governmental entity) certifies that DLJ is a wholly-owned subsidiary of Credit Suisse (USA), Inc. Credit Suisse (USA), Inc. is a wholly-owned subsidiary of Credit Suisse Holdings (USA), Inc., which is jointly owned by Credit Suisse and Credit Suisse Group. Credit Suisse is a wholly owned subsidiary of Credit Suisse Group. The shares of Credit Suisse Group are publicly traded on the Swiss Stock Exchange and are also listed on the New York Stock Exchange in the form of American Depositary Shares.

Dated:     New York, New York
           December 5, 2014

**HAHN & HESSEN LLP**

By:    s/ John P. Amato
        John P. Amato
        Robert J. Malatak
        Annie P. Kubic
488 Madison Avenue
New York, New York 10022
(212) 478-7200

*Attorneys for Defendant-Appellee*
*DLJ Mortgage Capital, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTIONAL STATEMENT .......................................................1

ISSUE FOR REVIEW ......................................................................2

STATEMENT OF THE CASE..............................................................2

    I.     Statement Of Facts ................................................4

           A.     The Mortgage Fraud Scheme And The DLJ Action...................4

               (1)    The Mortgage Fraud Scheme ...........................5

               (2)    The DLJ Action .................................8

               (3)    The Siegel Judgment ..........................9

            B.     The State Court Special Proceedings Consolidated Into The DLJ Action.........................10

               (1)    The Siegel Proceedings ......................10

                (2)    DLJ's Special Proceeding And Consolidation With The Siegel Proceedings.................10

            C.     The Sanctions Hearing In The DLJ Action .............................14

    II.     Relevant Procedural History ...............................................16

SUMMARY OF THE ARGUMENT ....................................................18

ARGUMENT ..............................................................................20

    I.     Standard Of Review ........................................................20

    II.    The Order Should Be Affirmed Because There Are No Issues Remaining For Adjudication And J&R Siegel/Massoud's Frivolous Litigation Practices Must End ..............20

CONCLUSION ............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Cassidy v. Chertoff*,
   471 F.3d 67 (2d Cir. 2006) ...................................................................20

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983)....................................................................20, 21

*DLJ Mortgage Capital, Inc. v. Kontogiannis,*
   110 A.D.3d 522 (N.Y. App. Div. 1st Dep't 2013) ............................12

*DLJ Mortgage Capital, Inc. v. Kontogiannis,*
   726 F. Supp. 2d 225 (E.D.N.Y. 2010) .................................................8

*Frederiksen v. City of Lockport*,
   384 F.3d 437 (5th Cir. 2004) ............................................................23

*Jallali v. Am. Osteopathic Ass'n,*
   Case No. 11-60604-CIV-COHN/SELTZER,
   2011 U.S. Dist. LEXIS 71023 (S.D. Fla. June 30, 2011)............21, 22

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) ..............................................................20

*Lipin v. Nat'l Union Fire Ins. Co.*,
   202 F. Supp. 2d 126 (S.D.N.Y. 2002) ...............................................21

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923).............................................................................20

*Stiftung v. Sumitomo Corp.,*
   88 Fed. Appx. 443 (2d Cir. 2004).....................................................19

STATUTES

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1294 ....................................................................................2

Fed. R. App. P. 30(a)(2) .......................................................................13

Defendant-Appellee DLJ Mortgage Capital, Inc. ("DLJ") respectfully submits this opposition brief in connection with the limited appeal by plaintiffs-appellants Jeffrey and Richard Siegel ("J&R Siegel") of the Order of Dismissal of Judge William F. Kuntz, II, dated and entered May 7, 2014, which dismissed this duplicative action *with prejudice* (the "Order") (A-96).[1]

## JURISDICTIONAL STATEMENT

J&R Siegel unabashedly commenced and continued prosecuting this action in federal court seeking (1) a judgment vacating an order of attachment, entered in DLJ's favor on April 14, 2011 (the "Attachment Order"), by New York State Supreme Court Justice Charles E. Ramos in the prior pending action captioned *DLJ Mortgage Capital, Inc. v. Kontogiannis, et al.*, Index No.: 104675/2010 (the "DLJ Action"), and (2) re-adjudication of various issues arising from a creditor priority dispute between DLJ and J&R Siegel that had already been decided in DLJ's favor in the DLJ Action or which were otherwise expressly reserved for adjudication therein, and were ultimately decided by the time the Order was entered. The District Court properly concluded that this was blatantly improper, and, accordingly, found that it did not have subject matter jurisdiction over the instant case, which presents purely state-law issues, because, *inter alia*, the

---

[1]  References to "A.__" refer to the page number of the Appendix filed with J&R Siegel's appellate brief.

*Rooker-Feldman* doctrine prohibits a federal district court from "sit[ting] as an appellate tribunal in review of a state court judgment, revisit[ing] the state court's decision, and declar[ing] it wrongly decided." (A-98). Accordingly, the District Court properly dismissed *with prejudice* J&R Siegel's amended complaint.

J&R Siegel do not appeal that portion of the District Court's Order determining that the relevant state court orders are binding and that it lacks subject matter jurisdiction, but only appeal the *with prejudice* language of the Order. J&R Siegel timely filed their limited notice of appeal, and this Court has jurisdiction over this limited appeal pursuant to 28 U.S.C. §§ 1291 and 1294.

## ISSUE FOR REVIEW

Whether, in light of the state court orders issued in the DLJ Action which fully adjudicated the claims asserted by J&R Siegel in the instant case, the District Court properly dismissed the instant action *with prejudice*, in order to prevent J&R Siegel from commencing additional, duplicative and frivolous litigation.

## STATEMENT OF THE CASE

DLJ is a duly perfected attachment and judgment-lien creditor of Annette Apergis ("Apergis") pursuant to an approximately $65 million judgment entered against her in the DLJ Action (the "DLJ Judgment"). (A. 19-20). Prior to the entry of the DLJ Judgment, on April 14, 2011, the Attachment Order was entered against Apergis' real and personal property, including the Apergis Properties at

2

issue herein.[2]  Thereafter, pursuant to several orders entered in the DLJ Action, Justice Ramos (1) denied the joint motions of J&R Siegel and their mother June Siegel (collectively the "Siegels") which sought, *inter alia*, to vacate each one of DLJ's three orders of attachment entered in the DLJ Action, including the Attachment Order, and (2) found that DLJ is a duly perfected attachment and judgment lien creditor of Apergis with senior rights over J&R Siegel in and to all of her real and personal property.  Thus, the state court has already decided all of the issues that J&R Siegel attempted to improperly raise and re-litigate in this action.  (A. 22-23, 39).

In a blatant attempt to circumvent the state court's jurisdiction, violate well-established law and take another bite at the apple to re-litigate issues that were already decided against them, and while their appeal of Justice Ramos' order denying vacatur of the Attachment Order was pending before the proper state appellate court, J&R Siegel (by and through their counsel Massoud & Pashkoff LLP ("Massoud" and together "J&R Siegel/Massoud") commenced this action

---

[2]  The "Apergis Properties" include the (i) real property located in the State of New York, County of Nassau, described as Block J-7, Lot 870, known by its street address 16 Woodfield Lane, Old Brookville, New York (the "Woodfield Property"); (ii) real property located in the State of New York, County of Queens, described as Block 13204, Lot 112, known by its street address as 134-20 241st Street, Rosedale, New York; and (iii) real property located in the State of New York, County of Queens, described as Block 13204, Lot 114, known by its street address as 134-22 241st Street, Rosedale, New York.

without advising the District Court about the extensive, overlapping and decisive proceedings in the DLJ Action.[3]  Far from an isolated incident, this frivolous and vexatious litigation conduct is a well-established pattern on the part of J&R Siegel/Massoud, and, in fact, such conduct was the subject of a three day sanctions hearing before Justice Ramos in the DLJ Action – a hearing that resulted in a sixteen page decision and order imposing monetary and equitable sanctions against J&R Siegel/Massoud for their frivolous conduct.

After giving the parties a full and fair opportunity to be heard and fully reviewing the entirety of the record before it, the District Court determined, *inter alia*, that it is without jurisdiction to revisit the state court orders, or otherwise adjudicate issues that, if adjudicated, would modify state court orders that already determined the relevant issues herein, and thus, appropriately dismissed this action *with prejudice* so as to once and for all **end this litigation**.

## I.   Statement Of Facts

### A.   The Mortgage Fraud Scheme And The DLJ Action

DLJ is the co-victim of a massive mortgage fraud scheme, which has been described by United States District Court Judge Kiyo A. Matsumoto (who presided over related criminal proceedings in which numerous individuals, including

---

[3]   As discussed below, during the pendency of this action and before entry of the Order, J&R Siegel's appeal was heard, and the Appellate Division, First Department unanimously affirmed that order.  *See infra*, p. 12.

Apergis, pled guilty to defrauding DLJ and Washington Mutual Bank, N.A. ("WaMu") in connection therewith) as the largest mortgage origination fraud on record, and was perpetrated by a vast criminal enterprise headed by Thomas Kontogiannis ("Kontogiannis"), and whose members included, among others, Apergis (Kontogiannis' daughter), and the entities she owns and controls (the "Mortgage Fraud Scheme"). (A. 15). The complete factual and procedural history of the Mortgage Fraud Scheme, subsequent fraudulent conveyances conducted to hinder, delay and defraud DLJ, and the DLJ Action is long and complex, and beyond the scope of this appeal, but, for the Court's benefit, the relevant history is highlighted below.[4]

### (1) The Mortgage Fraud Scheme

The massive Mortgage Fraud Scheme to which DLJ fell victim was so complex and pervasive that it required the knowing and active participation of dozens of individuals and entities, many of whom have pled guilty and had $98 million orders of restitution entered against them in favor of DLJ and its co-

---

[4] The factual history hereinafter discussed is supported by, and has been proven by a plethora of admissible evidence introduced in the DLJ Action and/or the related criminal proceedings, all of which has resulted in three separate orders of attachment, numerous monetary and equitable judgments entered in DLJ's favor in the DLJ Action, and restitution orders and forfeiture orders entered in the criminal proceedings.

victim, the FDIC (in its capacity as receiver for WaMu), for their role in the fraud. (A. 16).

Ultimately, the Mortgage Fraud Scheme involved numerous parties who participated at every significant level of the mortgage process, including: (1) Coastal Capital Corporation ("Coastal"), the mortgage finance company that sold the fraudulent mortgages to unsuspecting third parties, including DLJ; (2) attorneys who presided over the sham closings, and, *inter alia*, represented that the fraudulent documentation was fully executed and otherwise appeared to be in good order; (3) individuals who posed as straw buyers and/or represented the sellers; (4) a licensed real estate appraiser who prepared false appraisals; (5) title agents who prepared and issued false title documentation; and (6) a complicit architect who misrepresented the status of the properties, as many of the residential properties did not have final certificates of occupancy, or any occupancy certificates. (A. 16).

As part of the Mortgage Fraud Scheme, the co-conspirators defrauded DLJ by, *inter alia*, fabricating at least 95 residential real estate sales and mortgage loan transactions by creating phony loan applications in connection with purported purchases of residential property that certain co-conspirators owned and/or planned to develop, and then selling the fraudulent loan packages through Coastal to DLJ. In total, Coastal sold DLJ approximately $50 million of fraudulent mortgages. (A. 16-17).

The co-conspirators further concealed their fraud from DLJ in two specific ways. First, they issued more than 1,000 cover-up payments over several years (eight of which were checks signed by Apergis), totaling more than $5.2 million, to DLJ and other secondary market purchasers in order to give the appearance that the loans were legitimate and performing. Second, they interspersed the 95 fraudulent transactions within the sale of more than 1,700 legitimate real estate mortgage transactions over several years. (A. 17).

Not content with stealing $50 million from DLJ, certain of the co-conspirators then proceeded to the second phase of the Mortgage Fraud Scheme, which involved laundering money stolen from DLJ and fraudulently conveying and/or encumbering millions of dollars in assets so as to hinder, delay and defraud DLJ, and prevent DLJ from ever receiving restitution. (A. 17). All of the monies stolen from DLJ were then laundered, hidden and/or secreted through bank accounts held by various co-conspirators, including Apergis and the entities that she owns and/or controls. (A. 17). The co-conspirators (including Apergis) also executed dozens of fraudulent documents purporting to transfer and/or encumber various real properties that they own so as to make it appear that these assets are worthless. (A. 17).

### (2)    The DLJ Action

Based on the foregoing, in April 2010, DLJ commenced the DLJ Action, alleging claims for, *inter alia*, fraud and fraudulent conveyance.[5]  In or around August 2010, DLJ amended its complaint in the DLJ Action to add various additional defendants and allege its claims arising from the Mortgage Fraud Scheme.  (A. 18).  Simultaneously therewith, DLJ also moved for an order of attachment and preliminary injunction against many of the defendants named in the DLJ Action, including Apergis.  (A. 18).

After extensive proceedings before Justice Ramos, including, without limitation, (1) four different pleadings, (2) a two day evidentiary hearing, (3) full briefing and numerous oral arguments and other hearings concerning approximately thirty different motions, (4) expedited discovery, and (5) several telephonic and in-person conferences, DLJ obtained extensive relief from Justice Ramos, including (among other relief), three separate orders of attachment and various monetary and equitable judgments.  (A. 18).

---

[5]    Although DLJ had previously commenced a federal action asserting against the co-conspirators claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Judge Eric N. Vitaliano determined that DLJ lacked standing at that time to maintain its RICO claims, and dismissed, *without prejudice,* DLJ's federal action, for lack of subject-matter jurisdiction, therefore wiping the slate clean of any prior proceedings had in that action and allowing DLJ to press all of its claims in state court, which it did when it amended its state court complaint in August 2010.  *See DLJ Mortgage Capital, Inc. v. Kontogiannis,* 726 F. Supp. 2d 225 (E.D.N.Y. 2010).

Specifically, and most relevant hereto, on April 14, 2011, Justice Ramos entered the Attachment Order against all of the real and personal property of (among others) Apergis (including the Apergis Properties), to secure a sum of no less than $50 million. (A. 18-19). In connection with DLJ's Attachment Order, Justice Ramos found that "it is probable that DLJ will succeed on the merits" of its claims against Apergis, as she had "engaged in a massive fraudulent scheme." (A. 19).

Thereafter, in light of all of the evidence DLJ marshaled and proffered to Justice Ramos, and then after Apergis fully deployed her litigation stratagem of delay and obfuscation, which included her failure to answer DLJ's pleading and repeatedly asserting the Fifth Amendment and otherwise refusing to provide discovery in the face of several of Justice Ramos' orders directing that she do so, on November 26, 2012, the $65,810,514.61 DLJ Judgment was entered against Apergis (as well as several other similarly situated defendants) and in DLJ's favor. (A. 19-20). DLJ's judgment lien on the Apergis Properties (among others) relates back to the April 2011 Attachment Order.

### (3) **The Siegel Judgment**

On or about May 17, 2012 (almost one year after DLJ became a duly perfected attachment lien creditor of Apergis and over the Apergis Properties), J&R Siegel obtained their own judgment against Apergis. (A. 20).

**B.     The State Court Special Proceedings
       Consolidated Into The DLJ Action**

    **(1)     The Siegel Proceedings**

In or around September 2011 and November 2011, the Siegels commenced two special proceedings pursuant to Article 52 of the CPLR in the Supreme Court of the State of New York, Kings County (Index Nos.: 21968/2011 and 24753/2011 (together, the "Siegel Proceedings")).  (A. 21).  The Siegel Proceedings seek to enforce two separate judgments entered against Kontogiannis individually in favor of J&R Siegel and June Siegel by executing against the real and personal property owned by his family members and the entities that his family members own and control, including the Apergis Properties.  (A. 21).

Despite the pendency of the DLJ Action, and DLJ's status as a duly perfected attachment and/or judgment lien creditor of many of the co-conspirators (and their real and personal property), including Apergis and Kontogiannis (among others), both J&R Siegel and their mother failed to name DLJ in the Siegel Proceedings.

    **(2)     DLJ's Special Proceeding And
       Consolidation With The Siegel Proceedings**

In an effort to bring all interested parties into one court so that all of the competing creditors' claims could be fully and finally adjudicated, on or about January 20, 2012, DLJ commenced its own special proceeding under Articles 52

and 62 of the CPLR and, simultaneously therewith, moved for various forms of relief including, *inter alia*, an order (1) consolidating DLJ's special proceeding and the Siegel Proceedings with and into the DLJ Action, and (2) determining the priority of the competing creditors' claims in and to all of the assets owned by the Kontogiannis family, including the Apergis Properties (the "DLJ Priority Motion"). (A. 21-22).

The DLJ Priority Motion was then fully briefed and, on or about March 22, 2012, Justice Ramos granted that portion thereof which sought consolidation, and adjourned that portion which sought a determination of DLJ's and the Siegels' priority. (A. 22). Nonetheless, the Siegels then moved by two separate motions, for an order, *inter alia*, (1) vacating or modifying each of the orders of attachment entered in DLJ's favor in the DLJ Action, including the Attachment Order, and (2) granting them summary judgment on their priority claims as to certain of the properties and assets (but not the Apergis Properties) (the "Siegel Duplicative Motions"). (A. 22).

After full briefing, on June 12, 2012, Justice Ramos held oral argument on the remainder of the DLJ Priority Motion and, after extensive oral argument, Justice Ramos denied the Siegel Duplicative Motions in their entirety – including that portion which sought vacatur of the Attachment Order – and granted, in part, DLJ's motion seeking a determination of its priority over the Siegels in and to

various assets (other than the Apergis Properties), and an order to that effect was subsequently entered on July 27, 2012 (the "July 27th Order").[6] (A. 22-23). By decision and order dated and entered October 17, 2013, the July 27th Order was *unanimously* affirmed by the Appellate Division, First Department. *DLJ Mortgage Capital, Inc. v. Kontogiannis,* 110 A.D.3d 522 (N.Y. App. Div. 1st Dep't 2013) (the "Affirming Order"). (A. 48).

After entry of the July 27th Order, DLJ and J&R Siegel continued to litigate the remainder of the priority dispute concerning the remaining assets at issue in the DLJ Action and, after additional briefing and oral argument, Justice Ramos

---

[6] Notwithstanding the pending Siegel Duplicative Motions (which were scheduled for oral argument only one week later), on June 6, 2012, J&R Siegel again moved to vacate DLJ's Attachment Order (the "Siegel Second Motion") and pressed forward with the same, despite Justice Ramos' June 12th bench decision and July 27th Order. The Siegel Second Motion was fully briefed and submitted on July 6, 2012, and oral argument was scheduled thereafter. (A. 23). At oral argument, DLJ explained that the argument should be adjourned, and that Apergis be given a full and fair opportunity to be heard on the Siegel Second Motion, given that, pursuant to Justice Ramos' prior order, all proceedings against her (among others) had been stayed for a time certain so as to allow her to find new counsel, as her long-time counsel had retired. Justice Ramos agreed that oral argument should be adjourned and that Apergis needed to be heard on the Siegel Second Motion. J&R Siegel responded by withdrawing their motion. While it was fully expected, based upon the discussion at oral argument, that J&R Siegel would simply re-file the Siegel Second Motion (albeit ill conceived) once the stay expired, J&R Siegel did no such thing. Instead, in an incredibly blatant act of forum shopping, the day immediately following the day on which Justice Ramos entered an order indicating that the Siegel Second Motion had been withdrawn, J&R Siegel commenced this federal court action. (A. 23-24).

determined, in a forty-one (41) page decision entered December 10, 2013 (as modified by corrected decision entered January 10, 2014) (the "Second Priority Decision"), that DLJ is a duly perfected attachment and judgment lien creditor with senior rights over J&R Siegel in and to Apergis' real and personal property, including the Apergis Properties, and an order effectuating the relief granted therein was entered in the DLJ Action on December 23, 2013. (*See* Dkt. # 37).[7] Pursuant to the Second Priority Decision, Justice Ramos determined:

> DLJ has demonstrated that it is entitled to the award of priority with respect to [Apergis'] … real property vis-à-vis J&R Siegel. J&R Siegel failed to … obtain a lien on the real property of [Apergis] until after DLJ's First Attachment Order. Second Priority Decision (Dkt. # 37), p. 22.

> \*\*\*

> DLJ has demonstrated its achievement of priority over J&R Siegel with respect to the assets and property of [Annette Apergis] … *Id.* at p. 31.

> \*\*\*

> ORDERED AND ADJUDGED that DLJ Mortgage Capital, Inc. has lien priority vis-à-vis Jeffrey and Richard Siegel in the following real properties owned by judgment debtor … Apergis:  a house located at 16 Woodfield Lane, Glen Head, New York and two lots

---

[7] References to "Dkt. # __" refer to the relevant docket entry number in the District Court.  The specified and referenced documents were improperly omitted from the Appendix filed by J&R Siegel, but were, nonetheless, part of the record before the District Court, and, therefore, may be relied upon by DLJ and this Court in connection with this appeal.  Fed. R. App. P. 30(a)(2).

> located in Rosedale, Queens at 134-20 241st Street,
> Rosedale and 134-22 241st Street [*i.e.*, the Apergis
> Properties] … *Id.* at p. 32.

Accordingly, all of the issues presented to the District Court for adjudication
have been fully decided in DLJ's favor in the DLJ Action.

## C.    The Sanctions Hearing In The DLJ Action

Despite entry of the numerous orders discussed above, and the ongoing
priority dispute pending in the DLJ Action, J&R Siegel (by and through Massoud)
continued their attempts to circumvent and/or avoid all such orders by filing a
barrage of actions, proceedings and motions in various courts (on no less than eight
different occasions before no less than five jurists) concerning the exact same
parties, assets and issues pending in the DLJ Action, usually without naming or
notifying DLJ, or advising the other courts from which they sought relief about the
existence and pendency of the DLJ Action, DLJ's rights as an attachment and
judgment creditor, and/or the relevant orders entered in the DLJ Action (precisely
what was done in this action).  Accordingly, in connection with its opposition to
the Siegel Second Motion, DLJ cross-moved for sanctions against J&R
Siegel/Massoud based on their frivolous and harassing litigation conduct.

After a three day hearing, by memorandum decision and order dated January
21, 2014 and entered February 4, 2014, Justice Ramos imposed monetary and
injunctive sanctions against J&R Siegel/Massoud, ordering them to pay DLJ's

reasonable attorneys' fees incurred as a result of their frivolous conduct, and enjoining them from filing additional duplicative motions and/or proceedings (the "Sanctions Decision"). (*See* Dkt. # 38). In so holding, Justice Ramos made the following specific findings concerning this federal court action:

> In various correspondence, pleadings and motion papers filed with or delivered to this Court and others (i.e., Supreme Court Justices David I. Schmidt, Marguerite A. Grays and Bernice Daun Siegal, United States District Court Judge William F. Kuntz, United States Bankruptcy Judge Nancy Hershey Lord and the Appellate Division, First Department), J&R Siegel/Massoud have made misrepresentations and omitted material facts relating to this consolidated proceeding, and this Court's judgments and orders. Sanctions Decision (Dkt. # 38), p. 4.
>
> \*\*\*
>
> [J&R Siegel/ Massoud] commenced the J&R Siegel EDNY Action without notifying Judge Kuntz of the Consolidation Order, the July 27th Order and the TK Common Ownership Claim asserted in this action. *Id.* at pp. 5-6.
>
> \*\*\*
>
> This Court finds the above referenced actions [including this federal court action], proceedings, motions and statements to be unjustified examples of behavior that was frivolous, harassing, vexatious and contemptuous. *Id.* at p. 7.
>
> \*\*\*
>
> There is no question that J&R Siegel/Massoud's conduct falls squarely within this definition [of frivolous] given that they have repeatedly filed repetitive motions and have multiplied proceedings in several courts seeking the same relief, they have violated and ignored numerous

> court orders … and repeatedly failed to disclose to other courts in which they have sought identical relief as that sought in this action the existence of DLJ, this action and this Court's several Orders and Equitable Judgments. *Id.* at p. 11.

By decision and order dated and entered April 10, 2014, a five justice panel of the First Department denied J&R Siegel/Massoud's motion for a stay pending appeal of the Sanctions Decision.

## II.   <u>Relevant Procedural History</u>

Astonishingly, despite the entry of the order consolidating the various judgment enforcement proceedings and the July 27th Order (among others), on October 23, 2012, J&R Siegel commenced this action, seeking a judgment, *inter alia*, (1) vacating the Attachment Order entered in the previously filed DLJ Action, and (2) determining DLJ and J&R Siegel's creditor priority rights in and to the Apergis Properties.

DLJ moved to dismiss the action in its entirety on the grounds that, *inter alia*, (1) the District Court should decline to adjudicate the dispute between DLJ and J&R Siegel under the *Colorado River* doctrine of abstention in light of the prior pending DLJ Action, (2) pursuant to the *Rooker-Feldman* doctrine, the District Court was without subject matter jurisdiction to review the various orders and relief granted to DLJ in the DLJ Action, (3) J&R Siegel are collaterally estopped or otherwise barred by the law of the case doctrine from

re-litigating any and all issues that were already actually and necessarily decided by Justice Ramos in the DLJ Action, including, among others, the underlying merits of DLJ's Attachment Order and the July 27th Order, and (4) J&R Siegel failed to state a claim upon which relief can be granted since they did not set forth any basis to vacate or discharge DLJ's Attachment Order.[8] (A. 48). The motion was fully briefed and submitted to the District Court on February 22, 2013.

While the motion was *sub judice*, the DLJ Action proceeded, and numerous of the orders discussed above, including the Affirming Order, Second Priority Decision and Sanctions Decision, were entered in the state court. (Dkt. # 35-37). Accordingly, and based on *the entirety* of the record before it as of the date of the Order, the District Court (1) dismissed this action *with prejudice* on the grounds that, *inter alia*, under the *Rooker-Feldman* doctrine it is without jurisdiction to vacate, modify or in any way revisit the state court's orders, and (2) invited DLJ to make a motion for sanctions against J&R Siegel/Massoud. (A. 96-98).

---

[8] Shortly after DLJ filed its motion to dismiss, J&R Siegel filed an amended complaint. (Dkt. # 19). The parties then agreed that DLJ's motion would be deemed responsive to the amended complaint.

J&R Siegel do not appeal the District Court's dismissal of this action or its determination that the *Rooker-Feldman* doctrine prohibits it from re-adjudicating any and all matters that have previously been actually and necessarily decided by the state court. Rather, they appeal the Order only to the extent that it dismissed this action *with prejudice.* (A. 96).

## SUMMARY OF THE ARGUMENT

After reviewing the entirety of the record before it, the District Court properly determined that this action should be dismissed *with prejudice* because the state court has already decided each and every one of the issues presented herein, J&R Siegel are precluded from attempting to re-litigate same in this action, and the District Court was without jurisdiction to modify, vacate or in any way revisit the state court's final determinations. As for that portion of J&R Siegel's amended complaint which sought vacatur of the Attachment Order – pursuant to the final, non-appealable July 27th Order, Justice Ramos *had already determined* that the Attachment Order was providently granted, and denied the motion to vacate same, and the Appellate Division, First Department *unanimously* affirmed that determination. Although subject to a pending appeal, Justice Ramos has also resolved in DLJ's favor the priority dispute concerning Apergis' real and personal property, including the Apergis Properties. Nonetheless, J&R Siegel (with the assistance of their counsel Massoud) shockingly commenced this action and

pressed full steam ahead with their claims with absolute disdain for the rule of law and the entire judicial system.

These duplicative and frivolous litigation practices engaged in by J&R Siegel/Massoud are not unique to this action, and, in fact, are well documented, and have been acknowledged and admonished by numerous courts, including Justice Ramos and the District Court.[9]  Accordingly, after recognizing that all of J&R Siegel's claims for relief herein have, after a full and fair opportunity to be heard, already been adjudicated against them in state court, the District Court dismissed this action *with prejudice* to *finall*y put an end to these practices and prevent J&R Siegel/Massoud from attempting to re-litigate *yet again* these same issues and claims, thus further prejudicing DLJ and wasting even more judicial resources.

Accordingly, the District Court's Order should be affirmed in its entirety.

---

[9]  Mr. Massoud was also previously sanctioned by United States District Court Judge Barbara S. Jones, a decision that was unanimously affirmed by this Court.  *Stiftung v. Sumitomo Corp.,* 88 Fed. Appx. 443 (2d Cir. 2004).  In so affirming, this Court noted that "[t]he district court found that [Mr. Massoud and his client] engaged in a series of actions, orchestrated by [Mr. Massoud] in bad faith, to evade their discovery obligations, and that [Mr. Massoud and his client], with full knowledge that they were under a court order to produce the trustees for deposition, chose instead to voluntarily dismiss their suit for the purpose of evading that order.  Further, although [Mr. Massoud] represented otherwise to the district court, the court found that [Mr. Massoud and his client] then quickly filed the same lawsuit in state court under different plaintiffs' names."  *Id.* at 445.

## **ARGUMENT**

### **I.    Standard Of Review**

This Court reviews a district court's grant of a motion to dismiss *de novo*, accepting as true all factual allegations in the complaint and drawing all inferences in the plaintiff's favor.  *E.g., Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007); *Cassidy v. Chertoff*, 471 F.3d 67, 74 (2d Cir. 2006).

### **II.    The Order Should Be Affirmed Because There Are No Issues Remaining For Adjudication And J&R Siegel/Massoud's Frivolous Litigation Practices Must End**

At bottom, the basis for the District Court's Order with respect to J&R Siegel's claims against DLJ was that, at the time of its entry, *every single one of the relevant issues and claims* (*i.e.,* validity of DLJ's Attachment Order and creditor priority) were already fully decided by the state court in the DLJ Action. Simply put, there was nothing left for the District Court to decide, and the *Rooker-Feldman* doctrine prevented the District Court from reviewing and modifying in any way the state court's orders and/or revisiting the issues that were already decided in the previously entered state court orders.   Order, p. 3 (A-98). Accordingly, dismissal *with prejudice* was proper.  *See, e.g., District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-84 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

Not surprisingly, and consistent with their pattern of obfuscation and misrepresentation, J&R Siegel are *utterly silent* on the extensive history of the DLJ Action, the complete record before the District Court and the fact that, ultimately, the Order was based on the *Rooker-Feldman* doctrine and the fact that the issues between DLJ and J&R Siegel have already been fully and finally decided. Indeed, they present this Court with an incomplete and misleading recitation of the factual and procedural history and appeal only the *with prejudice* language of the Order, claiming that dismissal *with prejudice* was improper. Thus, J&R Siegel, by their limited appeal and utter silence, concede that dismissal itself was proper because the District Court has no power or authority to "sit as an appellate tribunal in review of a state court judgment, revisit the state court's decision, and declare it wrongly decided." Order, p. 3 (A-98).

Inherent in the District Court's determination (and J&R Siegel's concession) that it cannot grant J&R Siegel their requested relief is that to do so "would modify state court decisions" (*Lipin v. Nat'l Union Fire Ins. Co*., 202 F. Supp. 2d 126, 132-33 (S.D.N.Y. 2002) (citing *Feldman*, 460 U.S. at 482-84)), which have already determined that DLJ's Attachment Order was providently granted and DLJ has priority over J&R Siegel in and to the Apergis Properties – therefore, dismissal *with prejudice* was appropriate and the Order should be affirmed in its entirety. *See Jallali v. Am. Osteopathic Ass'n*, Case No. 11-60604-CIV-COHN/SELTZER,

2011 U.S. Dist. LEXIS 71023 (S.D. Fla. June 30, 2011), *aff'd per curiam*, 437 Fed. Appx. 862 (11th Cir. 2011).

*Jallali* is on point and particularly instructive. In that case, plaintiff first commenced an action in Florida state court. 2011 U.S. Dist. LEXIS 71023, at *2-5. Following final adjudication and a *with prejudice* dismissal of his claims, plaintiff then commenced a new action in federal court "seeking to relitigate the claims that the state court already denied." *Id.* at *7-8. The district court dismissed the action *with prejudice* on the grounds that, *inter alia*, (a) "the Rooker-Feldman doctrine deprives this Court of jurisdiction over [p]laintiff's claims" (*id.* at *12), and (b) the state and federal cases were "really the same" and, therefore concepts of claim preclusion and *res judicata* "barr[ed] [p]laintiff from relitigating his claims" in federal court." *Id.* at *16. In so finding, the *Jallali* court held:

> Accordingly, there is no original federal jurisdiction over this case, and consequently, there is no supplemental jurisdiction over [p]laintiff's remaining claims. Thus, there is no subject matter jurisdiction over this case. For this reason, in addition to the *res judicata* and Rooker-Feldman doctrines discussed above, the Court will dismiss [p]laintiff's Amended Complaint. Because further amendment will be futile, dismiss is **with prejudice.**

2011 U.S. Dist. LEXIS 71023, at *19-20 (emphasis added). In a *per curiam* decision, the Eleventh Circuit affirmed. 437 Fed. Appx. at 862.

22

Under the circumstances here, a dismissal *with prejudice* of J&R Siegel's claims is not contrary to this Court's decision in *Hernandez v. Conriv Realty Associates*, wherein this Court noted that "[a] dismissal with prejudice interferes with state court jurisdiction because it has the effect of a final adjudication on the merits favorable to [the] defendant, and therefore has res judicata effect – that is, it bars future suits brought by [the] plaintiff upon the same cause of action." 182 F.3d 121, 123 (2d Cir. 1999) (internal quotations omitted). Here, there is no concern that state court jurisdiction will be interfered with because J&R Siegel have already asserted the subject claims in the state court DLJ Action and lost at both the trial court and appellate level (with respect to the vacatur of the Attachment Order) or have otherwise perfected their appeal (with respect to the DLJ/J&R Siegel priority dispute over the Apergis Properties). Additionally, although the Fifth Circuit held in *Frederiksen v. City of Lockport*, 384 F.3d 437 (5th Cir. 2004), that a dismissal based on the *Rooker-Feldman* doctrine must be without prejudice, this Court is not bound by that court's decision, and DLJ respectfully submits that, in light of the relevant state court orders, J&R Siegel's frivolous and duplicative litigation practices, and their failure to set forth any basis whatsoever (let alone a reasonable one) to the District Court or this Court as to how or why a federal court can or should usurp the state court's jurisdiction and re-

adjudicate issues that have already been decided against them, departure from the Fifth Circuit's precedent in this case is especially warranted.

Accordingly, in light of the July 27th Order, Affirming Order and Second Priority Decision, as well as J&R Siegel's established (and continuing) pattern of frivolous and duplicative litigation practices (as discussed in the Sanctions Decision, and acknowledged by the District Court) dismissal *with prejudice* is appropriate here, and this Court should affirm in its entirety the District Court's Order.

## CONCLUSION

For all the reasons set forth above, defendant-appellee DLJ Mortgage Capital, Inc. respectfully submits that this Court should affirm the District Court's Order of Dismissal in its entirety.

Dated:   New York, New York
          December 5, 2014

**HAHN & HESSEN LLP**

By:   <u>   s/ John P. Amato    </u>
        John P. Amato
        Robert J. Malatak
        Annie P. Kubic
488 Madison Avenue
New York, New York 10022
212) 478-7200

*Attorneys for Defendant-Appellee*
*DLJ Mortgage Capital, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,669 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared using a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.


Dated:  New York, New York
          December 5, 2014


**HAHN & HESSEN LLP**


By:    s/ John P. Amato
       John P. Amato
       Robert J. Malatak
       Annie P. Kubic
488 Madison Avenue
New York, New York 10022
212) 478-7200


*Attorneys for Defendant-Appellee*
*DLJ Mortgage Capital, Inc.*